UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAPOLEON CUIN TINOCO, | No. 1:26-cv-00150-WBS-SCR |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner is a federal immigration detainee proceeding through appointed counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241. This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1). Currently pending before the court is petitioner's § 2241 petition, which has been fully briefed by the parties. ECF Nos. 6, 8.

**I.      Factual and Procedural History**

Petitioner is a native of Mexico who came to the U.S. in 2006. ECF No. 1 at 1. On November 18, 2025, Immigration and Customs Enforcement ("ICE") detained him in Los Angeles while he was on his way to pick up his nephew and a friend. ECF No. 1 at 1. Petitioner is currently detained at the California City Corrections Center located in this judicial district. ECF No. 1 at 2. He is not subject to a final order of removal. ECF No. 1 at 7. Respondents have not provided him with a hearing to determine whether his detention is warranted because they assert he is subject to mandatory detention under 8 U.S.C. § 1225(b). Several friends and family

1

members submitted letters of support highlighting petitioner's role in their lives and good character.  See ECF No. 1-1, Ex. C (Letters of Support for Petitioner).  For example, petitioner's niece, Anayareli Huerta Cuin, states, "He is compassionate, helpful, fair, and loving and always abides by the rules… he has always been a peaceful, responsible law-abiding person."  Id. at 20-21.  Petitioner includes two substantive claims for relief, which he captions "Count One" and "Count Three."[1]

In Count One, petitioner asserts that his ongoing detention without a bond hearing to determine whether he is a flight risk or danger to the community violates 8 U.S.C. § 1226(a).  "Following Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (B.I.A. 2025), Respondents have adopted a blanket interpretation that classifies all noncitizens who entered without inspection as subject to mandatory detention under § 1225(b), thereby denying bond eligibility to those properly detained under § 1226(a).  This interpretation is inconsistent with the statute and longstanding practice, resulting in the unlawful denial of individualized bond determinations."  ECF No. 1 at 8.  Petitioner asserts that he is similarly situated to the class members in Maldonado Bautista v. Santacruz, No. 5:25-cv-01873 (C.D. Cal., filed July 28, 2025), because he was arrested in the interior of the U.S. and will be denied a bond hearing in light of Yajure Hurtado.  ECF No. 1 at 8.

In Count Three, petitioner raises a Fifth Amendment Due Process challenge to his detention because it is not related to the statutory purpose of immigration detention, which is preventing a risk of flight or danger to the community.  ECF No. 1 at 9.  In support of this claim, petitioner submitted numerous exhibits demonstrating that he is neither a flight risk nor a danger to the community.  ECF No. 1-1 at 7-24.

By way of relief, petitioner requests a "prompt and constitutionally adequate bond hearing before an Immigration Judge, or, in the alternative, [] release [] from custody if such a hearing is not provided within a reasonable period."  ECF No. 1 at 2.

---

[1] There is no "Count Two."  Petitioner also includes a "Count Four" for attorney's fees and costs under the Equal Access to Justice Act ("EAJA").  Should the District Judge adopt these Findings and Recommendations, any request for EAJA fees and costs may be sought by separately noticed motion.

On January 27, 2026, respondents submitted a three page answer asserting that petitioner is an "applicant for admission" to the United States and that his detention is therefore mandatory pending removal proceedings pursuant to 8 U.S.C. § 1225(b)(2)(A).  ECF No. 6.

In his reply brief, petitioner submits that he is "a member of the Bond Eligible Class certified in Bautista v. Noem, and under the controlling statutory framework and persuasive authority interpreting it, his detention is governed by 8 U.S.C. § 1226(a), which entitles him to a bond hearing."  ECF No. 8 at 1.  He is not an applicant for admission under 8 U.S.C. § 1225(b)(2) because he "was arrested inside the United States after continuous residence, not at or near a port of entry.  Section 1225(b) governs pre-admission detention of individuals stopped at the border and provides no such bond authority.  Once a noncitizen is physically present in the country, whether lawfully admitted or not, the detention authority shifts to § 1226(a)."  Id. at 2.

**II.    Legal Standards**

As explained in more detail below, the Court recommends deciding this case on a statutory basis, making constitutional analysis unnecessary.  Accordingly, the undersigned does not describe the constitutional standards that apply to civil immigration detention.

**A.  Jurisdictional Standards**

A writ of habeas corpus is "available to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A court may grant a writ of habeas corpus to a petitioner who demonstrates that his or her custody violates the U.S. Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Petitioner contends that he is being detained in violation of both the Constitution and federal immigration law.  This court has jurisdiction to review these claims for relief.

**B.  Statutory Immigration Framework**

The statutory and regulatory framework governing immigration detention is complex.  "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is

3

mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). The Supreme Court described the detention statutes at issue in this case, 8 U.S.C. § 1225 and 8 U.S.C. § 1226, in some detail in Jennings v. Rodriguez, 583 U.S. 281 (2018):

> To implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering.

> **1**

> That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether [a non-citizen] seeking to enter the country is admissible. Under [] 8 U.S.C. § 1225, [a non-citizen] who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).

> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to [non-citizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other [non-citizens] designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).

> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain [non-citizens]. [Non-citizens] covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) [non-citizen] "indicates either an intention to apply for asylum ... or a fear of persecution," then that [non-citizen] is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the [non-citizen] has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). [Non-citizens] who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those [non-citizens] "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).

> **2**

> Even once inside the United States, [non-citizens] do not have an absolute right to remain here. For example, [a non-citizen] present in the country may still be removed if he or she falls "within one or more ... classes of deportable [non-citizens]." § 1227(a). That includes [non-citizens] who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission. See §§ 1227(a)(1), (2).

> Section 1226 generally governs the process of arresting and detaining that group of [non-citizens] pending their removal. As relevant here, § 1226 distinguishes between two different categories of [non-citizens]. Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of [a non-citizen]

4

"pending a decision on whether the [non-citizen] is to be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" [a non-citizen] detained under § 1226(a) "on ...bond" or "conditional parole." Ibid.

Section 1226(c), however, carves out a statutory category of [non-citizens] who may not be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any [non-citizen]" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1). The Attorney General may release [non-citizens] in those categories "only if the Attorney General decides ... that release of the [non-citizen] from custody is necessary" for witness-protection purposes and "the [non-citizen] satisfies the Attorney General that the [non-citizen] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2). …

In sum, U.S. immigration law authorizes the Government to detain certain [non-citizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [non-citizens] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

Id. at 286-89 (footnote omitted).[2]

### III.    Analysis

#### A. Petitioner's Detention Is Governed by § 1226(a)

Turning first to petitioner's statutory claim for relief, the undersigned follows the majority view in finding that the applicable statute governing his detention is § 1226(a), not § 1225(b)(2). Petitioner has resided in the United States continuously since 2006.  For several reasons, petitioner cannot be classified as an "applicant for admission" who is "seeking admission" into the United States such that 8 U.S.C. § 1225(b)(2) applies to him.

First, this interpretation of the relevant detention statutes was adopted by the Supreme Court in Jennings.  As noted above, in Jennings, the Supreme Court explained that "U.S. immigration law authorizes the Government to detain certain [non-citizens] *seeking admission into the country* under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain [non-citizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."  Id. at 289 (emphasis added).  The Supreme Court described proceedings

---

[2] The undersigned changed "alien" to "non-citizen" in these passages.  This has become commonplace among jurists at the Supreme Court and Ninth Circuit in recent years.  See Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); Avilez v. Garland, 69 F.4th 525 (9th Cir. 2023); Arce v. United States, 899 F.3d 796 (9th Cir. 2018).

under Section 1225 as a process that "generally begins at the Nation's borders and ports of entry, where the government must determine whether a [noncitizen] seeking to enter the country is admissible." Jennings, 583 U.S. at 287. "Then, when discussing Section 1226, Jennings describes it as governing 'the process of arresting and detaining' noncitizens who are living 'inside the United States' but 'may still be removed,' including noncitizens 'who were inadmissible at the time of entry.'" Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1258 (W.D. Wash. 2025) (quoting Jennings, 583 U.S. at 288). In short, while the Supreme Court did not address the precise arguments presented by respondents here, it understood that the structure and language of the two detention statutes show that they apply to different groups of non-citizens.

Other higher court authority directly supports petitioner's argument. A divided motions panel of Seventh Circuit Court of Appeals persuasively explained why respondents' interpretation of § 1225 would render the phrase "seeking admission" superfluous, thereby "violating one of the cardinal rules of statutory construction." Castañon-Nava v. U.S. D.H.S., 161 F.4th 1048, 1061 (7th Cir. 2025). As to the contention that petitioner's interpretation would advantage a non-citizen residing inside the United States after entering without inspection relative to a non-citizen apprehended immediately at a port of entry, the Seventh Circuit observed:

> [T]he difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed "[t]he distinction between a[] [non-citizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law." Zadvydas v. Davis, 533 U.S. 678, 693 (2001); Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those [non-citizens] who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Id. at 1061–62 (cleaned up). Moreover, this conclusion is in accord with the weight of authority from other district courts in the Ninth Circuit. See Rodriguez, 802 F. Supp. 3d at 1324–25 (W.D. Wash. 2025); Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 937 (N.D. Cal. 2025); Maldonado Vazquez v. Feeley, — F. Supp. 3d —, 2025 WL 2676082, at *12–16 (D. Nev. 2025); Rosado v. Figueroa, No. 25-cv-02157-PHX-DLR-CDB, 2025 WL 2337099, at *7–10 (D. Ariz. Aug. 11, 2025), report and recommendation adopted by, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025).

/////

There are other reasons to find that §1225(b)(2) does not apply to petitioner. Congress' passage of the Laken Riley Act ("LRA") confirms the distinction between §1225(b), as applicable to non-citizens arrested at or near the border, and §1226, as applicable to non-citizens arrested in the interior of the United States. Enacted in January 2025, the LRA added a mandatory detention category, codified at § 1226(c)(1)(E), for certain "inadmissible" noncitizens "present in the United States without being admitted or paroled" who have been charged, arrested, or convicted of certain types of offenses. See Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025); 8 U.S.C. § 1226(c)(1)(E). If § 1225(b)(2) already applied to all non-citizens present in the United States who have never been admitted, the LRA's provisions regarding inadmissible non-citizens would be wholly superfluous. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." Stone v. I.N.S., 514 U.S. 386, 397 (1995) (citations omitted) (giving effect to a congressional amendment of the INA). The LRA's "specific exceptions" for inadmissible non-citizens who are arrested, charged with, or convicted of the enumerated crimes within the United States leaves other inadmissible non-citizens arrested in the interior of the United States—like petitioner—under § 1226(a)'s default scheme of discretionary detention. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) (finding that Congress' crafting of "specific exceptions" to Federal Rule of Civil Procedure 23 "proves" that Rule 23 "applies generally").

The undersigned recognizes that a divided panel of the Fifth Circuit Court of Appeals recently held that § 1225(b)(2) applies to individuals like petitioner who were never admitted to the United States and have been arrested in the interior of the country. See Buenrostro-Mendez v. Bondi, — F.4th —, 2026 WL 323330 (5th Cir. 2026). The undersigned does not find Buenrostro persuasive, as it largely ignores the structure of the immigration detention scheme as a whole, relies on strained plain language analogies (e.g., regarding an applicant for admission to a college), and overextends statutory construction doctrine concerning redundancy. Rather, the undersigned joins other judges of this court in finding the dissent in Buenrostro persuasive. See, e.g., Wasef v. Chestnut, No. 1:26-cv-01078-DAD-JDP (HC), 2026 WL 392389 (E.D. Cal. Feb. 12, 2026).

As the dissent in Buenrostro found:

On the government's reading, the phrase "[non-citizen] seeking admission" [in § 1225(b)(2)(A)] does no independent work.  But "it is a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." Williams v. Taylor, 529 U.S. 362, 404 (2000).

Conversely, Petitioners' reading gives "seeking admission" independent force—it refers to noncitizens seeking entry into the United States—and chimes with the statutory definition of "admission" as "lawful entry ... into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  As the district court in Padron Covarrubias's case recognized, "a variation in terms suggests a variation in meaning."  The surplusage canon and statutory definition of "admission" reinforce the common-sense understanding: Petitioners were not "seeking admission when they were arrested inside the United States."

The majority, like the government, reasons that "seeking" is like "applying," on an analogy to applying to college and thereby seeking admission.  "Applicant for admission," however, is a specifically defined statutory term of art in § 1225(a)(1); "seeking admission" is not.  The majority's attempt to read the definition of "applicant for admission" back into the phrase "seeking admission," as if sharing a word necessitates sharing a meaning, is unpersuasive.

Buenrostro, 2026 WL 323330, at *12–13 (cleaned up).

The dissent also noted the implausibility of the majority's statutory construction in light of the context in which the statutory scheme as a whole was enacted:

[I]t is simply not plausible that the Congress that enacted IIRIRA intended to give the government the authority and mandate to detain all noncitizens unlawfully present in the United States without bond. As Petitioners point out, this would have required the detention [without bond] of millions of people, whereas Congress specifically gave the Attorney General authority to defer the agency's much more modest implementation of § 1226(c)'s new detention mandate, which affected only persons subject to removal based on certain criminal offenses—an estimated 45,000 people in total—out of a recognition that this mandate alone would strain the agency's limited detention capacity. To this, Petitioners add Congress's odd failure to correct, or show any signs of objecting to, the agency's failure to detain the millions of people it purportedly required to be detained. See Zemel v. Rusk, 381 U.S. 1, 11 (1965) ("Congress' failure to repeal or revise in the face of such administrative interpretation ... constitutes persuasive evidence that that interpretation is the one Congress intended."). For its part, the Department of Justice could hardly have been clearer that its contemporaneous understanding of the statute was the same as Petitioners': "Despite being applicants for admission, [non-citizens] who are present without having been admitted or paroled ... will be eligible for bond and bond redetermination."  Detention and Removal of Aliens, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997)[.]

* * *

No one has ever thought that § 1225(b)(2)(A) means what the government and majority say it means—because it does not mean it. Congress did not secretly require two million noncitizens to be detained without bond, when nothing like this had ever been done before, and the whole history of American immigration law suggested it would not be.

8

We would "expect more than simple statutory silence if, and when, Congress were to intend a major departure." Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 465 (2017) ... This is a quintessential elephant-in-a-mousehole interpretation, and is all the more suspect because of the inconsistency of the agency's views and its longstanding failure to assert this hidden power.

*3 Id. at *15–16 (cleaned up). In summary, the undersigned concludes that petitioner is detained under § 1226(a).

### B. Respondents' Rule Mandating Petitioner's Detention Without a Bond Hearing Has Been Vacated

Petitioner should also be granted relief because another federal court already vacated respondents' rule concerning 8 U.S.C. § 1225(b)(2) under the Administrative Procedures Act ("APA"). In Maldonado Bautista, a judge of the U.S. District Court for the Central District of California entered a declaratory relief judgment in favor of a class of non-citizens that includes petitioner. The Maldonado Bautista judgment included APA vacatur of the rule that respondents advance here: that non-citizens in petitioner's position are detained under § 1225(b)(2). As explained below, this Court can and should enforce that declaratory relief judgment.[3]

The undersigned will briefly summarize the Maldonado Bautista proceedings before addressing the merits of petitioner's claim under the judgment in that action. The Maldonado Bautista plaintiffs challenged the legality of the DHS Policy dated July 8, 2025:

On July 8, 2025, the Department of Homeland Security (DHS) instituted a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." The Notice communicated DHS's choice, in coordination with the Department of Justice ("DOJ") to "revisit[ ] its legal position on detention and release authorities," determining that Section 235 of the Immigration and Nationality Act ("INA") would serve as the applicable immigration detention authority rather than Section 236 for all "applicants for admission." [Id.]. In other words, the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A). Under § 1225(b)(2)(A), "applicants for admission" are subject to mandatory detention for proceedings under 8 U.S.C. § 1229(a) and not entitled to the due process protections found within § 1226(a).

Maldonado Bautista v. Santacruz, No. 5:25-cv-1873-SSS-BFM, 2025 WL 3289861, at *1 (C.D. Cal. Nov. 20, 2025) (cleaned up). As a result of the new DHS Policy, the Maldonado Bautista

---

[3] Respondents do not address petitioner's argument regarding his membership in the Maldonado Bautista class. See ECF No. 6.

petitioners, like petitioner here, were denied bond hearings and remained in detention.  Id. at *2.

On November 20, 2025, District Judge Sykes granted Petitioners' motion for partial summary judgment and declared the DHS Policy unlawful.  Id. at *5-11.  After an extensive review of the statutory language, Judge Sykes determined that the DHS Policy "unacceptably collapse[s] § 1226 into nonexistence under a wide-reaching interpretation of 'applicants for admission.'"  Id. at *11.  On November 25, 2025, Judge Sykes granted Petitioner's motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2).  Maldonado Bautista v. Santacruz, No. 5:25-cv-1873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).  The certified, "Bond Eligible Class" was defined as:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

Id. at *9.  The class was certified "as to Petitioners' claims that the DHS Policy violates the INA and Due Process."  Id.

The Maldonado Bautista Petitioners subsequently filed an application for reconsideration and clarification of the November 25 order.  On December 18, 2025, Judge Sykes granted in part and denied in part the application, clarifying that the partial summary judgment order declared the DHS Policy unlawful and granted vacatur under the APA: "Because vacatur is a necessary consequence of declaring an agency action unlawful, vacatur of the DHS Policy is within the scope of the MSJ Order."  Maldonado Bautista v. Santacruz, No. 5:25-cv-1873 SSS BFM, 2025 WL 3713982, at *4 (C.D. Cal. Dec. 18, 2025).  Judge Sykes concurrently issued an Amended Consolidated Order that elaborated on the vacatur relief:

> Section 706(2)(A) of the APA commands a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, ... or otherwise not in accordance with law." § 706(2)(A) (emphasis added). The only possible outcome following the Court's interpretive determination regarding the INA is vacatur under the APA.

Maldonado Bautista v. Santacruz, No. 5:25-cv-1873 SSS BFM, 2025 WL 3713987, at *16 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, No. 5:25-cv-

10

01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

With respect to petitioner's contention that he is a member of the Bond Eligible Class certified in Maldonado Bautista, the undersigned agrees, and that the judgment vacating the DHS Policy is binding here.  When "regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioner is proscribed."  Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (internal quotation marks omitted)  Indeed, the Ninth Circuit recently affirmed the nationwide scope of APA vacatur in a case concerning revocations of Temporary Protected Status.  See Nat'l TPS all. v. Noem, --F.4 th--, 2026 WL 226573, at *17-18 (9th Cir. 2026).  While recognizing that "there are difficult and unanswered questions related to the limits of APA relief under" Trump v. CASA, 606 U.S. 831 (2025), the Ninth Circuit noted that the Supreme Court in CASA expressly declined to address the scope of APA relief.  Id.; see also CASA, 606 U.S. at 847 n.10 (distinguishing between universal injunctions and relief under the APA, which the opinion expressly declined to reach); id. at 873 (Kavanaugh, J., concurring) (noting that "setting aside or declining to set aside an agency rule under the APA" remained an available remedy to district courts in lieu of a universal injunction); Texas v. United States, 40 F.4th 205, 229 n.18 (5th Cir. 2022) ("reject[ing] DHS's contention that the nationwide vacatur is overbroad[;] [i]n the context of immigration law, broad relief is appropriate to ensure uniformity and consistent in enforcement").  There is accordingly nothing unusual or improper about the judgment in Maldonado Bautista vacating the DHS Policy in a manner that operates at a class level.

The question then becomes what this Court should do with a declaratory judgment from another court.  A declaratory judgment is "legally binding on the parties" to a case, Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc., 632 F.3d 1111, 1123 (9th Cir. 2011), and carries "the force and effect of a final judgment."  28 U.S.C. § 2201.  Plaintiff has demonstrated that he is a member of the Bond Eligible Class in Maldonado Bautista.  The government respondents in this case are for legal purposes the same as the respondents in Maldonado Bautista.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all

11

respects, other than name, to be treated as a suit against the entity ... the real party in interest is the entity."). The undersigned accordingly finds that the Maldonado Bautista declaratory judgment applies to the parties in this case.

Although a declaratory judgment "is not backed by the power of contempt," courts "generally assume" that government officials will comply with one. See United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023). A court may issue further relief when they fail to do so. At least one district judge of this Court has done just that. See Singh v. Bondi, No. 1:26-cv-00789-DAD-CKD, 2026 WL 320449, at *1 (E.D. Cal. Feb. 6, 2026) (noting that "[f]inal judgment was entered for the class certified in Bautista" and that "'[t]he doctrine of res judicata ensures the finality of decisions .... The doctrine applies to jurisdictional issues as well as substantive issues'") (quoting Americana Fabrics, Inc. v. L&L Textiles, Inc., 754 F.2d 1524, 1528-29 (9th Cir. 1985). Moreover, in a recent order enforcing its judgment, the Court in Maldonado Bautista noted that respondents in that case acknowledged the potential "preclusive effect in habeas litigation filed by [Bond Eligible Class members]." Maldonado Bautista v. Santacruz, No. 5:25-cv-1873-SSS-BFM, 2026 WL 468284, at *8 (C.D. Cal. Feb. 18, 2026). While the undersigned recognizes the District Judge in this case has found Maldonado Bautista not enforceable in denying a motion for a temporary restraining order in another case, see Ore Falcon v. Wofford, No. 1:26-cv-00181-WBS-EFB, 2026 WL 171927 (E.D. Cal. Jan. 22, 2026), the undersigned respectfully believes Maldonado Bautista is binding and enforceable.[4]

Petitioner also raises a Fifth Amendment due process claim in his § 2241 petition. However, because petitioner's statutory claim provides adequate relief, the undersigned declines to adjudicate his constitutional claim. See Nw. Austin Mun. Util. Dist. No. One v. Holder,

---

[4] Maldonado Bautista is not the only APA ruling that entitles petitioner to the bond hearing he requests. A judge in the U.S. District Court for the Northern District of California ordered an APA stay of the DHS Policy within the jurisdiction of the ICE San Francisco Field Office. See Garro Pinchi v. Noem, No. 25-cv-05632 PCP, 2025 WL 3691938 (N.D. Cal. Dec. 19, 2025). Because the ICE San Francisco Field Office exercises jurisdiction over the California City Corrections Center where petitioner is being held, that ruling also applies to petitioner. Pursuant to the vacatur in Maldonado Bautista and the stay in Garro Pinchi, respondents cannot deny petitioner a bond hearing on the premise that he is subject to detention pursuant to 8 U.S.C. § 1225(b).

557 U.S. 193, 205 (2009) ("normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case[.]") (citations omitted).

### C. Scope of Habeas Relief

The undersigned must next determine the appropriate scope of habeas relief.  Considering § 1226(a)'s discretionary detention framework, as well as the absence of any prior release on bond pursuant to § 1226(a), the undersigned does not find immediate release to be an appropriate remedy.  See 8 U.S.C. § 1226(a)(1) (authorizing the Attorney General to arrest and detain noncitizens pending removal proceedings); Rodriguez, 779 F. Supp. 3d at 1263 (W.D. Wash. 2025) (denying petitioner's request for immediate release and explaining "that the specific harm [petitioner] alleges—that he is unlawfully barred from receiving a bond hearing on the merits—is remedied by granting his request for a bond hearing under Section 1226(a)[.]").  Accordingly, the undersigned will recommend that respondents be ordered to provide a bond and custody redetermination hearing within 7 days.  The undersigned will make an additional recommendation that respondents be enjoined from asserting, at a bond hearing or appeal of a bond hearing determination, that the immigration judge lacks the authority to hear petitioner's request for bond pursuant to Matter of Yajure-Hurtado.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's § 2241 application (ECF No. 1) be GRANTED.

2. Respondents be ordered to provide the petitioner a bond hearing before an immigration judge within seven days.

3. Respondents be ordered not to assert, at any bond hearing or appeal of the immigration judge's bond hearing determination, that the immigration judge lacks jurisdiction pursuant to Matter of Yajure-Hurtado.

4. Judgment be entered in petitioner's favor.

5. Any request for attorney's fees and costs be filed by noticed motion within the time prescribed under EAJA.

6. This case otherwise be closed.

/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 24, 2026.

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

14